# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1862

_____

| | | |
|---|---|---|
| In re: James M. Craig, | * | |
| | * | |
| Debtor, | * | |
| | * | |
| _____ | * | |
| | * | |
| | * | |
| Kip M. Kaler, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Trustee - Appellee. | * | District of North Dakota. |
| | * | |
| v. | * | |
| | * | |
| James M. Craig, | * | |
| | * | |
| Defendant - Appellant, | * | |
| | * | |
| | * | |
| Carrington Health Center, | * | |
| | * | |
| | * | |
| Defendant - - Appellee. | * | |
| | * | |

_____

Submitted: November 18, 1997
Filed: June 11, 1998

_____

Before BEAM, HEANEY, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Dr. James Craig appeals from the order entered by the district court[1] affirming the bankruptcy court's summary judgment order that a note given to Dr. Craig by Carrington Health Center for $82,053.75 was not an executory contract and that it should be included in the bankruptcy estate. Craig argues that the promissory note was an executory contract which was never assumed by the Trustee and did not become the property of the estate; that the note should be excluded from estate because the note's only value was the result of services performed by Craig after he filed bankruptcy; that the note had no value at the time Craig filed for bankruptcy because it was subject to contingencies over which Craig and Security State Bank had control; and that the value of the note was a factual issue making summary judgment inappropriate. We affirm the judgment of the district court affirming the decision and order of the bankruptcy court.

Craig, a licensed physician, moved to Carrington, North Dakota in 1991 and began working at Carrington Health Center. On July 19, 1993, he and the Center formalized their relationship by entering an Independent Contractor Services Agreement. On that same day, Craig gave the Center a promissory note for $141,795.91, which was the balance Craig owed to the Center pursuant to a Physician Search Agreement; this note provided that if Craig maintained a full-time medical practice in Carrington until July 19, 1995, the Center would write off the remaining balance. Also on that day, the Center purchased Craig's medical practice, including accounts receivable and personal property, and gave Craig a promissory note for $82,053.75.

In December 1993, Craig borrowed $82,000 from Security State Bank of North Dakota to purchase a house and land. The bank would agree to the loan only if the

---

[1] The District of North Dakota, Southern Division, Chief Judge Rodney Webb.

Center guaranteed the Craig's indebtedness and pledged a certificate of deposit to secure the guarantee. The Center agreed to the guarantee and pledge on the condition that Craig deliver the Center's note to Craig for $82,053.75 to the Center and grant the Center the right to offset its indebtedness to Craig against any amount it would have to pay on the guarantee to Security State Bank. Craig further agreed that the Center's note to him would not become due until the Center had no further liability to Security State Bank on Craig's loan.

Craig filed for Chapter 7 bankruptcy on May 1, 1995. Craig owed the Center on the $141,795.91 promissory note at this time, but on July 19, 1995, the Center forgave this indebtedness because Craig completed his twenty-four month work commitment to the Center.

In June 1996 the Trustee commenced an adversary proceeding seeking to have the note held by the Center turned over to the estate and contending that the estate was entitled to the net amount due Craig from the Center because of the $82,053.75 note. Craig argued, however, that this note should be viewed with all of the other agreements signed on July 19, 1993, as one overall contract. Craig contended that the overall contract was executory in nature; that the Trustee was obligated to assume or reject it within sixty days of filing; and since the Trustee did not do so, it was deemed rejected and no part of it would come into the estate.

The bankruptcy court found that the payment on the $82,053.75 note was not an executory contract, that the contingent nature of the Center's obligation to pay Craig did not prevent its inclusion in the estate and, therefore, the promissory note for $82,053.75 should be turned over to the estate. The bankruptcy court further ruled that the Center may validly set off the $72,791.42 which it paid Security State Bank for the amount it owed Craig on his medical practice. As a result, the bankruptcy court granted summary judgment to the Trustee and ordered the Center to turn over $21,808.84, the principal and interest on the note minus the amount offset.

The district court affirmed the bankruptcy court's order.

## I.

We review the district court's disposition of the summary judgment motions de novo. Barker v. Ceridian Corp., 122 F.3d 628, 632 (8th Cir. 1997). In doing so, we view the evidence in the light most favorable to the party opposing the motion. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

## II.

Dr. Craig argues that the promissory note was not property in the bankruptcy estate because it was an executory contract which was not assumed by the Trustee. Under the Bankruptcy Code, if a trustee does not assume an executory contract within sixty days after the order for relief, or within such additional time as the court fixes, then the contract is deemed rejected. 11 U.S.C.A. § 365(d)(1) (1994). In this case, the Trustee took no such action. Dr. Craig contends that the promissory note was therefore not part of the bankruptcy estate.

This circuit has defined an executory contract as "'a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'" Northwest Airlines, Inc. v. Klinger (In re Knutson), 563 F.2d 916, 917 (8th Cir. 1977) (quoting V. Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973)). Under this definition, the $82,053 promissory note was not an executory contract because the promisee, Dr. Craig, had already performed by turning over his ownership interest in

-4-

his existing medical practice and was merely awaiting payment.

Dr. Craig, however, argues that the two promissory notes, a purchase agreement, an option agreement, and the Independent Contractor Services Agreement combined to form a series of interrelated executory contracts, none of which could be executed until all of them could be fully executed.  Dr. Craig bases this argument on a North Dakota statutory provision which states, "Several contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together."  N.D. Cent. Code § 9-07-07 (1997).  The North Dakota Supreme Court, however, stated in First National Bank of St. Thomas v. Flath, 86 N.W. 867, 870 (1901), that "[t]he requirement that the several contracts are to be 'taken together' does not mean that they are to be joined, and thereby become a single contract, but plainly means that they are to be 'taken together' for the purpose of interpreting, either the transaction to which they relate, or the several contracts themselves.  It does not purport to destroy the separate identity of the several contracts, and does not do so in effect."

Nothing in any of the documents suggests that the validity of the $82,053 promissory note was contingent upon the performance of Dr. Craig's duties under the other contracts.  Thus, whether interpreted individually or in the context of the other documents, the $82,053 promissory note was not an executory contract.

## III.

Dr. Craig further contends that the $82,053 promissory note had no value as of May 1, 1995, the date on which he filed bankruptcy, and so could not have been part of the bankruptcy estate.  Dr. Craig argues that the $82,053 note was valueless because, at the time, the Center held a $141,796 promissory note against Dr. Craig.  Dr. Craig also argues that the $82,053 note was valueless because, as of May 1995, it was being held by the Center as security for the Center's guarantee on an $82,000 loan

from Security State Bank to Dr. Craig.

We are unpersuaded. Neither the $141,796 note nor the Center's security interest in the $82,053 note diminished the value of the $82,053 note. The Center had a right to offset its debt to Dr. Craig against the $141,796 note or against its obligation to Security State Bank on Dr. Craig's behalf. Dr. Craig, however, had a corresponding right to offset his debts to the Center against the $82,053 note. Thus, even if it could not have been realized in the form of a cash payment, the $82,053 promissory note had value in that it could be used to reduce any claims by the Center against Dr. Craig or against the bankruptcy estate. A debtor's right to setoff is property of the bankruptcy estate. See 5 Collier on Bankruptcy ¶ 553.03[7][b] (Lawrence P. King ed., 15th ed. 1998) We therefore reject this argument.

## IV.

Finally, Dr. Craig maintains that, even if the $82,053 note was part of the bankruptcy estate, an issue of fact remains as to the note's value on the day he filed bankruptcy. Dr. Craig contends that it is only that value which should be included in the bankruptcy estate. As discussed above, the value of the promissory note at issue was not affected by the other transactions between Dr. Craig and the Center. Therefore, the value of the promissory note was always dictated by its own terms, and no genuine issue of fact remains.

Accordingly, we affirm the district court's grant of Trustee's motion for summary judgment and denial of Dr. Craig's motion for summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT